**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WILLIAM ANTHONY HENDERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-7788** |
| **DARREL VANNOY, WARDEN** | **SECTION "R"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.    **Factual and Procedural Background**

The petitioner, William Anthony Henderson ("Henderson"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On November 19, 2009, Henderson was initially indicted by a Terrebonne Parish Grand Jury for first degree murder.[3] The indictment was amended several times to ultimately charge Henderson with one count of second degree murder of K.N., one count of second degree cruelty to a juvenile, K.N., and one count of cruelty to a juvenile, K.H.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 8, Indictment, 11/19/09; Grand Jury Return, 11/19/09; Minute Entry, 12/7/09.

[4]St. Rec. Vol. 1 of 8, Amended Indictment, 9/17/12; Minute Entry, 9/17/12; Second Amended Indictment, 7/13/12, Minute Entry, 7/13/12; Amended Indictment, 2/23/12; Minute Entry, 2/23/12; Amended Indictment, 8/10/10

The record reflects that, late in the evening on October 29, 2009, in Chauvin, Louisiana, Henderson and his live-in girlfriend, Kimberly Nelton, left Nelton's two children, ten-month-old K.N. and two-year-old K.H., home alone while they visited with neighborhood friends.[5]  Around 11:00 p.m. that night, Henderson and Nelton put the children to bed and walked next door to a neighbor's house where they began to drink alcohol.  As that gathering grew, the party was moved farther down the street to another house.  Henderson and Nelton followed the party and became more intoxicated as the night continued.  Shortly before leaving, Henderson and Nelton got into a disagreement about whether Henderson was too drunk to drive Nelton's car.  Upset, Henderson began walking home alone.  Nelton stayed behind and eventually drove a neighbor to a friend's apartment before she returned home herself around 3:30 a.m., which was approximately thirty-minutes after Henderson left the party to walk home.  When Nelton got home, she noticed that K.H. had been moved onto the living room sofa and that K.N.'s playpen had been moved from the bedroom into the living room.  She did not check on the children because she did not hear them crying.

The next morning, Nelton was awoken at 10:05 a.m. by a phone call from the food stamp office.  Nelton took the call and went to the bathroom to change K.H.'s diaper.  While Nelton was on the phone, defendant approached her and said that K.N. was not breathing.  She immediately called 911, but paramedics were unable to revive the child because he had already been deceased for some time before they arrived.

---

and 1/19/11; Grand Jury Return, 8/10/10; Minute Entry, 1/19/11 (not guilty to second amended indictment). Louisiana law requires the use of initials to identify minors and victims of sex crimes, and this Court will abide by that preference. La. Rev. Stat. Ann. § 46:1844W.

[5]The facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Henderson*, 135 So.3d 36, 41-42 (La. App. 1st Cir. 2013); St. Rec. Vol. 6 of 8, 1st Cir. Opinion, 2013-KA-0074, pp. 2-4, 9/13/13.

Dr. Susan Garcia of the Jefferson Parish Forensic Center performed the autopsy of K.N. and determined that he died as a result of suffocation due to external force, making his death a homicide. Dr. Garcia also found a number of bruises around K.N.'s face and neck area that indicated to her that some force was placed on the front of his face. She also observed that K.N. had recent breaks in each of his forearms and on his left ribcage. Dr. Garcia found that K.N. had lacerations to his right nostril and to his frenulum,[6] which indicated that there had been manual compression of his face. She also noted lividity on K.N.'s back, which indicated that he probably had lain on his back for two to four hours after his death.

In his statement to police, after several versions of the events that night, Henderson finally stated that K.N. was crying when he got home, and he attempted to quiet him by grabbing his face and telling him to shut up. He explained the bruising on K.N.'s head and mouth area by saying that he slipped and fell while carrying K.N. Henderson's statement continued to change about whether K.N. continued to cry after he was placed in the living room. Initially, Henderson said that K.N. cried for a while after he laid K.N. back in the playpen. He later stated that K.N. stopped crying after he tried to hush him. He also told detectives that K.N.'s hand twitched as he held his hand over K.N.'s mouth and, when he put K.N. into the playpen, he covered the child with a blanket from head to toe.

The investigation by Detective Michelle Blades of the Terrebonne Parish Sheriff's Office revealed that Henderson's house had no running water at the time of the incident and that the sole toilet in the residence was filled with feces and dirty tampons. She also found that two-year-old K.H. had extensive bruising on his thighs, back, chest, and head. This was attributed to Nelton's statement that Henderson would physically discipline K.H. and that he occasionally left marks on

---

[6]The lingual frenulum attaches the tongue to the floor of the mouth. https://www.medicinenet.com/.

the child as a result.  The investigation also revealed that Henderson previously had been seen

yelling at K.N. and violently bouncing the child on a trampoline.  The same witness also confirmed

that K.H. was covered in bruises when she saw him on October 20, 2009.

Henderson was tried before a jury on September 17, 18, 19, 20, 21 and 24, 2012, and was

found guilty as charged on all three counts.[7]   On October 22, 2012, the Trial Court denied

Henderson's motions for a new trial and for post-verdict judgment of acquittal.[8]  At the sentencing

hearing held on November 5, 2012, the court denied Henderson's supplemental motion for new

trial and after waiver of legal delays, sentenced Henderson to serve concurrent prison sentences of

life in prison on count one without benefit of parole, probation, or suspension of sentence and ten

years on each of counts two and three.[9]

On direct appeal to the Louisiana First Circuit Court of Appeal, Henderson's appointed

counsel asserted six errors:[10] (1) The Trial Court erred in denying the defense challenge for cause

of juror Jill Allen; (2) The Trial Court erred in denying the *Batson* challenges as to Linda Barrow

and Wanda Westerly; (3) The State erred when it amended the bill of information on the third day

of trial to include neglect as elements of counts one and two; (4) The Trial Court erred in denying

the motion for a special jury charge on the definitions of the crimes charged; (5) The Trial Court

---

[7]St. Rec. Vol. 1 of 8, Trial Minutes, 9/17/12; Trial Minutes, 9/18/12; Trial Minutes, 9/19/12; Trial Minutes, 9/20/12; Trial Minutes, 9/21/12; Trial Minutes, 9/24/12; Jury Verdict (count one), 9/24/12; Jury Verdict (count two), 9/24/12; Jury Verdict (count three), 9/24/12; Special Trial Transcript, 9/21/12; St. Rec. Vol. 2 of 8, Trial Transcript, 9/17/12; St. Rec. Vol. 3 of 8, Trial Transcript (continued), 9/17/12; Trial Transcript, 9/18/12; St. Rec. Vol. 4 of 8, Trial Transcript (continued), 9/18/12; Trial Transcript, 9/19/12; Trial Transcript, 9/20/12; St. Rec. Vol. 5 of 8, Trial Transcript (continued), 9/20/12; Trial Transcript, 9/21/12; Trial Transcript, 9/24/12.

[8]St. Rec. Vol. 1 of 8, Trial Court Order (2), 10/23/12; Motion for New Trial, 10/22/12; Trial Court Order, 10/23/12; Motion for Post-Verdict Judgment of Acquittal, 10/22/12.

[9]St. Rec. Vol. 1 of 8, Sentencing Minutes, 11/5/12; Trial Court Order, 11/5/12; Supplemental Motion for New Trial, 11/5/12.

[10]St. Rec. Vol. 6 of 8, Appeal Brief, 2013-KA-0074, 2/4/13.

erred in limiting the defense's cross-examination of Nelton; and (6) The Trial Court erred when it allowed the State to introduce Nelton's out of court statement through Detective Kody Voisin.  On September 13, 2013, the Louisiana First Circuit affirmed Henderson's convictions and sentences finding no merit in the claims.[11]

The Louisiana Supreme Court denied Henderson's related writ application without stated reasons on March 21, 2014.[12]  Henderson's conviction was final under federal law ninety (90) days later, on June 19, 2014, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

Eight months later, on February 18, 2015, Henderson signed and submitted an application for post-conviction relief to the Trial Court in which he asserted that he received ineffective assistance of counsel when counsel: (1) failed to object and re-urge a motion to suppress; (2) failed to impeach Captain Dawn Foret at the motion to suppress; and (3) failed to object to the Trial Court's instruction at the *Faretta* hearing during trial.[13]  On March 25, 2015, the Trial Court denied relief finding no merit to the claims under the standards in *Strickland v. Washington*, 466 U.S. 668 (1984) and related case law.[14]

---

[11]*Henderson*, 135 So.3d at 36; St. Rec. Vol. 6 of 8, 1st Cir. Opinion, 2013-KA-0074, 9/13/13.

[12]*State v. Henderson*, 135 So.3d 617 (La. 2014); St. Rec. Vol. 6 of 8, La. S. Ct. Order, 2013-K-2327, 3/21/14; La. S. Ct. Letter, 2013-K-2327, 10/1/13.  The State failed to provide a copy of this writ application.

[13]St. Rec. Vol. 6 of 8, Application for Post-Conviction Relief, 2/27/15 (dated 2/18/15).

[14]St. Rec. Vol. 6 of 8, Trial Court Reasons for Judgment, 3/25/15.

The Louisiana First Circuit denied Henderson's related writ application without stated reasons on July 24, 2015.[15] On April 13, 2017, the Louisiana Supreme Court denied Henderson's subsequent writ application holding that Henderson failed to show ineffective assistance of counsel under *Strickland*.[16]

## II.    Federal Petition

On August 12, 2017, Henderson, through retained counsel, filed this federal petition for habeas corpus relief in which he asserted the following grounds for relief:[17] (1) his trial counsel was ineffective for failure to object and re-urge a motion to suppress his statement when Christopher Duplantis's trial testimony directly contradicted testimony in the suppression hearing from Terry Daigre and Dawn Foret; (2) his trial counsel was ineffective for failure to impeach Captain Dawn Foret during the motion to suppress and failed to argue that Detective Blades's testimony contradicted Terry Daigre's testimony during the hearing on the motion to suppress; and (3) Henderson was denied his Sixth Amendment right to self-representation when the trial court misled him by giving improper instructions at the *Faretta* hearing and his Trial counsel was ineffective for failing to object to the improper instruction.

The State filed a response in opposition to Henderson's federal habeas petition asserting that the petition was not timely filed based on the State's assertion that Henderson's counsel recognizes the possible untimeliness of the federal petition and asserting that the prisoner mailbox

---

[15]St. Rec. Vol. 7 of 8, 1st Cir. Order, 2015-KW-0782, 7/24/15; St. Rec. Vol. 8 of 8, 1st Cir. Writ Application, 2015-KW-0782, 5/14/15 (dated 5/12/15); *see also*, St. Rec. Vol. 7 of 8, Notice of Intent, 4/14/15; Trial Court Order, 4/16/15.

[16]*State ex rel. Henderson v. State*, 215 So.3d 664 (La. 2017); La. S. Ct. Letter, 2015-KH-1617, 8/27/15; St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2015-KH-1617, 4/13/17; St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 2015-KH-1617, 8/27/15 (dated 8/20/15).

[17]Rec. Doc. No. 1.

rule should not be applied to Henderson's state application for post-conviction relief.[18]  Henderson, through counsel, filed a reply to the State's opposition response urging the Court to apply the prisoner mailbox rule or find that Henderson is entitled to equitable tolling based on counsel's calculation error.[19]

## III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which was filed by Henderson's counsel on August 12, 2017.  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State's opposition response does not address exhaustion or procedural default.  The State, however, has alleged that Henderson's federal petition was not timely filed under the AEDPA.  Having reviewed the record, however, the Court finds that the State's limitations defense must be rejected.  In addition, the Court finds *sua sponte* that Henderson has presented a mixed petition containing both exhausted and unexhausted claims and for the reasons discussed, must be dismissed for failure to exhaust state court remedies.

---

[18]Rec. Doc. No. 12.

[19]Rec. Doc. No. 16.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

IV.    <u>The Petition was Timely Filed</u>

The State urges that Henderson's federal petition should be dismissed as untimely filed under the AEDPA.  The State asserts that Henderson's federal petition was filed eleven days after the one-year AEDPA filing period expired.  In reaching this conclusion, the State argues that the court should not apply the mailbox rule to Henderson's state application for post-conviction relief "because there is no proof in the record as to the mailing date" of that pleading, which was filed by the clerk of the state trial court on February 27, 2015.[21]  The State suggests that the affidavit attached to the state application for post-conviction relief bearing Henderson's signature and that of Classification Officer George Head and Henderson's signed Certificate of Service, all dated February 18, 2015, simply are not reliable.  The State urges that the Court only consider the actual filing date of that document, February 27, 2015, in calculating the timeliness of Henderson's federal petition.

Alternatively, the State contends that even if the mailbox rule is applied and February 18, 2015 is used, Henderson's petition still is not timely filed in this federal court.  Henderson urges the Court to apply the mailbox rule, or alternatively equitable toll any period inadvertently miscalculated by counsel based on that perceived mailbox filing date.  For the reasons that follow, the State's limitations defense should be rejected.

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[22]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  As stated above,

---

[21]Rec. Doc. No. 12, p. 6.

[22]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-
   A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

Henderson's conviction was final under federal law on June 19, 2014. Pursuant to § 2244, Henderson had one year from that date, or until June 19, 2015, to timely file a federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Henderson's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999)).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is

---

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

"pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

As an initial matter, a timeliness calculation under the AEDPA in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above. The State, however, presents unsupported assertions that the mailbox rule does not apply and that Henderson's signed and verified statements of the mailing date of his state application for post-conviction relief are wholly unavailing.

It has long been generally accepted in this Court that the date a prisoner signs his petition is presumed to be the earliest date he could have delivered it to prison officials for mailing. *See*, *e.g.*, *Colarte v. LeBlanc*, 40 F. Supp.2d 816, 817 (E.D. La. 1999) (petitioner presumed to have turned his habeas corpus application over to prison officials for delivery to this Court on the date

he signed his application); *Magee v. Cain*, No. 99-3867, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (filing date and signature date of habeas petition were the same); *Punch v. State*, No. No. 98-2867, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (reasonable to infer that prisoner delivered habeas petition to prison officials for mailing on date he signed petition). The State has pointed to nothing to disprove or discredit the veracity of declarations by Henderson in the affidavit and certificate attached to his state application or the date on which he signed and mailed that pleading.

Furthermore, the State is incorrect in its calculation of the timeliness of Henderson's federal petition when the state application is presumed to have been delivered to prison officials on February 18, 2015, when it was signed and verified. Under a proper calculation of timeliness, the one-year AEDPA filing period would have begun to run on June 20, 2014, the day after his conviction was final under federal law. The one-year filing period continued to run for 243 days, until February 18, 2015, when he signed and submitted his state application for post-conviction relief. This pleading remained pending in the state courts until April 13, 2017, when the Louisiana Supreme Court denied his related writ application. The one-year AEDPA filing period began to run again the next day, April 14, 2017, and did so for 120 days, until August 12, 2017, when Henderson's counsel filed the instant federal petition. By this proper calculation, Henderson's federal petition was timely filed in this court on day 363, two days before the expiration of the one-year filing period allowed by statute with statutory tolling considered.

For these reasons, the State's limitations defense must be rejected. The Court will now address Henderson's failure to exhaust as the reason for dismissal of the petition.

## V.     **Exhaustion Doctrine**

As both parties recognize, Henderson filed a post-conviction application in the state trial court and proceeded with related writ applications to the Louisiana First Circuit and the Louisiana

Supreme Court.  However, a thorough reading of Henderson's state court pleadings reveals that he has asserted two claims in his federal petition that were not presented to any of the state courts. In addition, two of the claims in his federal petition were not presented to the Louisiana First Circuit during the post-conviction review process.  Because exhaustion was not specifically addressed by the State's opposition response, out of an abundance of caution and to the extent necessary, the Court places Henderson, who is represented by counsel, on notice that it is *sua sponte* raising the issue of his failure to exhaust state court remedies.  *Accord Kurtzemann v. Quarterman*, 306 F. App'x 205, 206 (5th Cir. 2009) (citing *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations) and *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)) (finding that district court may *sua sponte* raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given); *see also*, 28 U.S.C. § 2254(b)(3) (the State's failure to raise exhaustion is not a waiver of the defense).

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him and his counsel that this Court is** *sua sponte* **raising the issue of exhaustion and that petitioner must submit any evidence or argument concerning the default as part of any objections filed to this report.**  *Magouirk*, 144 F.3d at 350, 360.

In his state application for post-conviction relief, Henderson asserted three specific claims of ineffective assistance of trial counsel: (1) counsel failed to object and re-urge a motion to suppress after Christopher Duplantis's trial testimony contradicted other officers' testimony at the suppression hearing; (2) counsel failed to impeach Captain Dawn Foret at the motion to suppress; and (3) counsel failed to object to the Trial Court's instruction at the *Faretta* hearing during trial.

After the state trial court denied relief under *Strickland*, Henderson filed a writ application with the Louisiana First Circuit asserting only two claims: (1) the state trial court applied the wrong

law and did not understand the proper law related to *Miranda* warnings when it denied relief on his first post-conviction application and trial counsel was ineffective for failing to utilize available discovery and object to the factual testimony offered at the suppression hearing; and (2) trial counsel was ineffective for failing to object to the trial court's instruction at the *Faretta* hearing. At this level, Henderson substantively altered his first post-conviction claim of ineffective assistance of counsel to include elements of investigation and discovery and failed to assert his second post-conviction claim regarding counsel's failure to impeach Captain Foret at the suppression hearing.

The Louisiana First Circuit denied the writ application without comment. In his writ application to the Louisiana Supreme Court, however, Henderson again asserted the same three claims and arguments previously raised in the state trial court application for post-conviction relief.

In the federal petition now before this Court, Henderson has added two new claims and arguments not in the original three state post-conviction claims or the two writ applications. Specifically, Henderson now also urges that his trial counsel was ineffective for failing to argue that Detective Blades's testimony contradicted Terry Daigre's testimony during the suppression hearing, and that he was denied his Sixth Amendment right to self-representation when the trial court misled him by giving improper instructions at the *Faretta* hearing. The latter claim is urged under the Sixth Amendment separately and distinctly from the claim that counsel was ineffective for failing to object to the improper instruction. Neither of these new claims were presented to any state court before being presented to this federal court.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v.*

*Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added).

The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" to the highest state court.  *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan*, 533 U.S. at 177-79.

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."  *Id.* (citing *Nobles*, 127 F.3d at 420). When ineffective assistance of counsel is raised, the claim is not exhausted if the petitioner did not raise or mention the same basis or legal theory in the state court proceedings that is asserted in a federal petition.  *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."); *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983) (factual bases for ineffective assistance claim were not exhausted as "significantly different" from those raised in state court).

Furthermore, it is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court, and vice versa. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim). A petitioner does not fairly present a claim if the reviewing court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.* at 32.

To exhaust review of all of his claims in the state courts, Henderson must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through to the Louisiana Supreme Court in a procedurally proper manner. The record reflects that Henderson properly and clearly exhausted state court review of only one claim, in which he argued that his trial counsel was ineffective for failing to object to the trial court's instruction at the *Faretta* hearing.

He did not assert at all, in his Louisiana First Circuit writ application, his claim that counsel should have re-urged the motion to suppress after Duplantis's trial testimony contradicted the testimony at the suppression hearing or his claim that counsel failed to impeach Captain Foret at the suppression hearing. Although the claims were raised in the state trial court, exhaustion is not met by simply attaching the lower court's opinion or even the post-conviction application itself without specifically asserting the claims to the Louisiana First Circuit. *Baldwin*, 541 U.S. at 32. This left one level of review out of the state post-conviction process as to those two claims.

Even more compelling is Henderson's inclusion of two claims, counsel failed to object to Detective Blades's testimony and denial of Sixth Amendment right to self-representation, in his federal petition that were not presented or argued to any state court. These new theories and

15

arguments are not exhausted and are not properly before this Court. *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Ogan*, 297 F.3d at 358.

Henderson, therefore, has not allowed the state courts one full opportunity to review all of his substantive claims through the Louisiana Supreme Court. His petition includes both exhausted and unexhausted claims and is therefore a "mixed petition" subject to dismissal for that reason. *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420). The Supreme Court has long required that a mixed petition like this one should be dismissed without prejudice to allow for complete exhaustion. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (citing *Rose*, 455 U.S. at 510).

In *Pliler*, the Supreme Court recognized that, as an alternative to dismissal for a petitioner to return to state court to complete exhaustion, the petitioner may choose to amend or resubmit the petition to pursue only properly exhausted claims in the federal district court. *Id.*, 542 U.S. at 230-31. While the Court also addressed the availability of a stay-and-abeyance in connection with certain "mixed petitions" for habeas relief containing both exhausted and unexhausted claims,[23] it reiterated the long-standing directive that a mixed petition should be dismissed without prejudice to require complete exhaustion. *Id.* at 230-31.

In this case, the record discloses no good cause for Henderson's failure to exhaust these claims, and there is none apparent from the record. Henderson simply has not given the state courts a full and proper opportunity to complete review of all of his claims and arguments. His petition should be dismissed without prejudice to allow Henderson to exhaust available state court

---

[23]The Supreme Court has made clear that stay-and-abeyance is an extraordinary remedy <u>not</u> to be made readily available to a habeas petitioner. *Rhines v. Weber*, 544 U.S. 269, 278 (2005). The *Rhines* Court cautioned that a stay-and-abeyance "should be available only in <u>limited</u> circumstances," and is appropriate <u>only</u> when the district court determines that there was "good cause" for the failure to exhaust. *Id.* at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or when the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id.* at 277-78. This case reveals no good cause for Henderson's failure to exhaust properly and fails to warrant consideration of a stay.

remedies as to all of his claims, unless he chooses to amend this habeas petition to dismiss the unexhausted claims and arguments and present only the exhausted claim for further review in this Court. *Pliler*, 542 U.S. at 233 (citing *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Henderson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[24]

New Orleans, Louisiana, this __18th__ day of May, 2018.

_____

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[24]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.