UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIAM ANTHONY HENDERSON     CIVIL ACTION

VERSUS     NO. 17-7788

DARRELL VANNOY     SECTION "R" (4)

## ORDER AND REASONS

Before the Court is William Anthony Henderson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court has reviewed *de novo* the petition,[1] the record, the applicable law, the Magistrate Judge's Report and Recommendation,[2] and petitioner's objections.[3] Because the Magistrate Judge was correct that the trial court conducted an acceptable *Faretta* hearing, the petition is dismissed.

Henderson was charged with second degree murder and cruelty to a juvenile.[4] During his trial, Henderson moved to represent himself. The trial judge then began a *Faretta* hearing, to ensure that Henderson was competent to waive his right to representation and that he understood the

---

[1]     R. Doc. 28.
[2]     R. Doc. 30.
[3]     R. Doc. 35.
[4]     St. Rec. Vol. 1 of 8, January 19, 2011, Amended Indictment.

dangers and disadvantages of self-representation. *See Faretta v. California*, 422 U.S. 806, 835 (1975). The judge engaged in a meaningful *Faretta* hearing, in which he advised Henderson of various constitutional rights; asked Henderson various questions about his age, education, and employment; and inquired into his understanding of the law and courtroom procedures.[5] At the end of the *Faretta* hearing, Henderson withdrew his motion for self-representation.[6]

Henderson takes issue with only one minor part of the *Faretta* hearing. Specifically, he objects to the portion of the hearing in which the trial court asked Henderson if he understood that by taking the stand, he could not just "stand and tell [his] story," but that he would have to ask questions of himself.[7] Henderson indicated that he had not been aware of that procedural requirement, but that he understood it once the judge explained it.[8] Henderson argues this particular question produced a "chilling effect" and was "misleading and unnecessary to determine [Henderson's] competency to waive his right to counsel."[9]

---

[5] St. Rec. Vol. 2 of 8, Trial Transcript, Vol. I, at 335-49.
[6] *Id.* at 349.
[7] R. Doc. 31 at 4; *see also* St. Rec. Vol. 2 of 8, Trial Transcript, Vol. I, at 345.
[8] St. Rec. Vol. 2 of 8, Trial Transcript, Vol. I, at 345.
[9] R. Doc. 31 at 2, 4.

2

The thrust of Henderson's argument is that this question from the trial court did not speak to Henderson's competency to waive his right to counsel, but rather his competency to represent himself. Henderson is correct that "the competence that is required of a defendant to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1993) (emphasis removed). But Henderson misunderstands that *Faretta* hearings also serve the purpose of ensuring that a defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

One such "danger and disadvantage" of self-representation is a lack of familiarity with the procedural and evidentiary rules that govern proceedings. Thus, questions regarding understanding of courtroom proceedings—similar to those asked by the trial court here—are well within the scope of a proper *Faretta* hearing. *See, e.g., United States v. Davis*, 269 F.3d 514, 519 n. 11 (5th Cir. 2001) (noting that the Benchbook for U.S. District Court Judges includes questions regarding the Federal Rules of Evidence and

Federal Rules of Criminal Procedure in the sample questionnaire for *Faretta* hearings).

Importantly, the trial court did not find that Henderson could not waive his right to counsel *because* of a lack of understanding of procedural or evidentiary rules. Indeed, the trial court never made any ruling on Henderson's competency to waive his right to counsel, because petitioner withdrew his request. Rather, these questions were designed to ensure that Henderson would waive his right "with eyes open," as required by *Faretta*. *Faretta*, 422 U.S. at 835. And counsel's failure to object to such questioning could not possibly be considered so deficient as to be ineffective assistance of counsel, particularly under the doubly deferential standards set out by *Strickland v. Washington*, 466 U.S. 668 (1984), and 28 U.S.C. § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Henderson also takes issue with the trial court's statement that although the court would appoint standby counsel, said counsel could not intervene or ask questions. Petitioner states that the Supreme Court has allowed standby counsel "to explain and enforce basic rules of courtroom protocol" and "aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *McKaskle v. Wiggins*, 465

U.S. 168, 176, 184 (1984) (citation omitted). But the issue in *McKaskle* was whether counsel had infringed on a defendant's *Faretta* rights to self-representation though some involvement in the courtroom, and there the Supreme Court noted that there is no constitutional right to the sort of hybrid representation that Henderson argues that trial court should have allowed and apprised him of. *See McKaskle*, 465 U.S. at 183. Since *McKaskle*, the Fifth Circuit has explicitly held that "there is no constitutional right to hybrid representation." *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996); *see also Randolph v. Cain*, 412 F. App'x 654, 658 (5th Cir. 2010) ("Of critical importance here, although defendant possesses the right to counsel as well as the right to self-representation, there is *no* constitutional right to have both through a 'hybrid representation' scheme." (emphasis in original)). And again, the failure to object to the trial court's statement does not constitute ineffective assistance of counsel here.

Rule 11 of the Rules Governing Section 2254 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2254 Proceedings, Rule 11(a). A court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rules Governing Section 2254 Proceedings,

Rule 11(a) (noting that an issue must "satisfy the showing required by 28 U.S.C. § 2253(c)(2)" for a certificate to issue).

This statutory language codified the judicial standard "for determining what constitutes the requisite showing" for a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). "Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

For the reasons stated above, petitioner has not made a substantial showing of the denial of a constitutional right; he raises no issues reasonable jurists could debate or which deserve further encouragement. Accordingly, the Court will not issue a certificate of appealability.

New Orleans, Louisiana, this __13th__ day of December, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE